Our final case for argument today is United States v. Blackman. Ms. Stone. May it please the Court, Counsel for the Government. Judges, at the outset I'd like to reserve two minutes for rebuttal, which somehow didn't get on the schedule. Walter Blackman pled guilty to delivering drugs to a confidential witness. He was thereafter sentenced to 180 months that stemmed from the Court's finding of a guideline range of 168 to 210 months. He was facing a mandatory minimum of 10 years, and he received 15 years. A principal argument in mitigation at his sentencing was the crack-powder disparity that we have all heard many times for the past many years. Actually, I would like to start there. Our circuit says that standard or stock arguments needn't be addressed. By this time, isn't that in that category? We have identified as stock arguments those arguments that sentencing courts see routinely and that don't distinguish one defendant from another. That seems to be the state of things for anybody who's being sentenced for a crack offense. So the question is, under this circuit's law, doesn't this now qualify as a stock argument? Well, Judge, I'm not sure it's the circuit's law under Morris, but to directly answer your question about a stock argument, I don't think so, particularly in Mr. Blackman's case. Because I was the trial counsel, and there were extensive, extensive memoranda and argument that were non-stock about the guidelines, particularly as it applied to Mr. Blackman. One of the things that was in the written memoranda and the oral argument was that Mr. Blackman was African-American, and obviously not African-American. Not all African-Americans are before courts getting crack sentencing. There's white Americans and Hispanic. But we directly spoke to the disparity that impacts African-Americans. Of course, the guidelines expressly forbid consideration of race as a sentencing factor. So it's not surprising to me that if you make an argument based on something that both the guidelines and probably the Constitution rule out as relevant, the judge isn't talking about that either. Well, this was a 35-53 disparity argument. So it wasn't a guideline argument. It was telling the court, for example, that in 2006, the Sentence Commission found that 82 percent... Look, if a district judge said, I'm giving this man a lower sentence because he's black, that would be summarily reversed. Yes, and that's not what I was asking. I was bringing to the court's attention statistics. I was also bringing to the court's attention as it applied to my client that the powder guidelines pertaining to my client were much more in line with the 10-year mandatory minimum, which was the sentence that I believed was fair and that I was arguing. This is a man who came before the court, pled guilty, pled guilty to additional relevant conduct, and that's what I was arguing. And then tried to express that if he were charged with powder, his sentence would have been substantially lower. And I believe Morris, which is this case, is a very recent case here, 2015. I think the Morris case was on all fours with our case. And although you're calling it a stock argument, it was the same kind of argument that was raised in Morris. And this court basically said, look, it's impossible to discern from the record whether the court credited Morris for principal arguments, which were, by the way, in Morris, crack powder and sentencing manipulation, which ironically were ours. Those were our arguments. We are just addressing the crack powder disparity this morning. But Morris says we have to remand because we can't discern from this record. The district court judge was silent on the crack powder disparity, although it was raised orally at the sentencing and in multiple memoranda. And I would also raise with this court that this isn't a case where you can say that because the district court addressed the seriousness of the offense, which he did, and the government argued this in their briefs, the judge talked about how serious these drug cases were, talked about the recidivism, and therefore, implicitly, the judge said, okay, I'm not giving him a modified guideline sentence. But that's exactly what happened, the United States versus Arbery, a 2010 case before this court. And the government argued the very exact thing, and this court said it doesn't matter. The record does not show that Arbery's crack powder disparity argument was ever considered. There's nothing implicit, there's surely nothing explicit in the record. The government concedes that there was nothing explicit concerning the court's consideration of this matter. So I believe the precedent in this court does allow for the consideration of the procedural error committed by the district court in not considering that crack powder disparity. And going back to Morris for a second, what's interesting about Morris also is this court said, I understand that that was even a below guideline, so implicit in a below guideline surely has to be that the judge considered crack powder. However, this court said, sorry, record's blank. Mr. Blackman's record below is blank concerning this disparity that applied specifically to him, that was addressed specifically to him regarding his characteristics, regarding the statistics concerning African Americans. Those were all the things that the district court was exposed to under 3553, yet it did not peep a word. And I will reserve the remaining, I'll stand on my brief on the other issues and reserve the remaining time for rebuttal. Thank you. May it please the court, I'm Assistant U.S. Attorney Carol Bell and I represent the United States. The crack powder disparity argument defendant made is a valid mitigating argument and the district court did not expressly address it. However, the court imposed an appropriately individuated sentence for this defendant, discussing the other arguments the defense counsel presented that were more defendant specific. Also discussing at length the seriousness of the offense and the defendant's background as a gang leader and serious drug trafficker, as well as his significant criminal history, including federal and state convictions for attempted murder, drugs, and guns. This was an extremely thoughtful sentence, the basis of which the court laid out in great detail after reading the party's sentencing memoranda, which included the disparity argument. The court was undoubtedly... Ms. Bell, you know, the government has conceded that Judge Chang never addressed the disparity argument. And that argument was briefed substantially in writing and it was reiterated orally at the sentencing. There's no way, it seems to me, to determine on this record whether the judge considered it. And if not, whether it might have affected his choice of sentence. And that is the lesson of Morris. Your Honor, I believe in this case that the court did consider the argument and found that disparity argument unpersuasive. And one way we can see that is by looking at the fact that the district court here chose a sentence for this defendant that was within the middle of the guideline range. And we see on the record how the court articulated why the range and why the sentence it chose were appropriate for this defendant based on his criminal history and characteristics as well as the seriousness of the offense. In comparison, the sentence in Morris was below the guideline range there. And also that argument in Morris seemed to be more tailored to that particular defendant, being that the argument presented in Morris was that the weight of counterfeit substance combined with the crack powder disparity unfairly drove the guideline range significantly higher. In comparison with this case, I do believe the argument presented was less focused on this particular defendant and was more of a generic argument asking for the one-to-one ratio to be applied. But I believe the record does show that the court considered it and rejected it. I really don't understand your argument. How was this not a principal argument in mitigation, given that several pages of Mr. Blackman's briefing were devoted to it, and as I noted earlier, his counsel orally reiterated it at the sentencing. And the government has already conceded in briefing, certainly, and I think I heard it a few minutes ago, that Judge Chang did not address it. And address it means talking about it, not what you can glean from his sentencing, but what he said, and that did not occur here. Your Honor, it's correct that the district court did not talk about the disparity issue at the sentencing, and the government, looking back on this, on the sentencing, found there were approximately five or more arguments presented by defense counsel in mitigation. Certainly, the disparity argument was one of those that was raised and discussed at the sentencing hearing, but whether it's labeled as a principal argument or not does not seem to necessarily be the end of the question. Some arguments could be labeled principal but may not merit discussion. This argument certainly was more of a generic one-to-one ratio argument, and the court, by its record, by its sentence in the middle of the guideline range, did not seem to have any sort of feelings of restriction or discomfort with the range it calculated, and certainly articulated why that range and the sentence it imposed were appropriate for this defendant. The court did order some extra briefing. That was apparently on, what is it, the Brewer testimony or something? Yes, Your Honor. The sentencing in this case started in January with the cooperator's testimony, and afterward the court did order additional briefing from the parties regarding the guidelines issues relating to drug quantity and the gun possession, and the parties did do the extensive briefing, which was considered by this court among the many filings that the parties made. But apparently the Morris issue was fully briefed. Did it need additional briefing on that? The Morris argument was not the subject of the additional briefing, although defense counsel first raised the disparity argument in her initial sentencing memorandum before the sentencing at which the cooperator testified. The briefing that was on the guideline issues, which were, as Your Honors can attest from reviewing the record, heatily contested and thoroughly vetted and reviewed by the district court in this case. Well, I just want to go with Morris says it has to be articulated in some way, other way. That's all. There was another opportunity there. If the court has no further questions, I respectfully ask that it affirm defendant's sentence. Thank you. Ms. Dunham, anything further? Thank you. The government's argument that the 15 years was an appropriate sentence is not relevant to the issue before the court. We don't get to the reasonableness of a sentence until we establish that the sentencing was subjected to procedurally correct, was procedurally correct. So the government can speak all they want to about their belief in the 15 years, but if there's procedural error, then I believe this court has to I think sentencing should be conducted on the model of the list of things that the district judge has to advise a defendant of under Rule 11, so that the district judge would go up with a bench book, and the bench book would say, I have to mention that I'm rejecting the following arguments, and they would click, click, click, click. Would that improve the quality of sentencing? Probably not. I'm pretty sure not. I've done a lot of sentencing, I don't think so, but when you have an argument that is so principled and so impacting. And made in every single crack case. I have never seen a crack case without this argument, ever since Kimbrough. District judges hear it day in and day out. That's why I'm asking how sentencing can be improved by this requirement, that it just be checked off on a list, I have considered your Kimbrough argument, and I'm not persuaded. Next check box. I don't think humans respond like that. But judges, courts make mistakes. This court failed to address the major argument that impacted his sentencing more than any other 3553 factor. The recidivism argument was tough. He was already in his 50s. I understand that. This was the principle argument, and it was ignored. And by the way, Morris case, the judge considered the same things that the judge here considered. The seriousness of the offense, the history and characteristics, the protection of the community, rehabilitative programs. And this court, excuse me, the district court in this case, said he had to consider deterrence, general and specific. The sentence had to reflect just punishment and to protect the public as well as to promote respect for the law. And then he sentenced him. Morris cannot be distinguished from this case. Therefore, I would ask you to vacate and remand for resentencing. Thank you. Well, thank you very much. We appreciate your willingness, Ms. Dom, to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement and the court will be in recess.